IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Teresa Hughes, | ) | C/A No.: 3:03-2450-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Jo Anne B. Barnhart, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff, Teresa Hughes, brought this action pursuant to § 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act.

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 405(g) of that Act provides: "[T]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964); *see*, *e.g.*, *Daniel v. Gardner*, 404 F.2d 889 (4th Cir. 1968); *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966); *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *See*, *e.g.*, *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299 (4th Cir. 1968). "[T]he court [must] uphold the [Commissioner's] decision even should the court disagree with such decision

1

as long as it is supported by 'substantial evidence.'" *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). As noted by Judge Sobeloff in *Flack v. Cohen*, 413 F.2d 278 (4th Cir. 1969), "[f]rom this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Id*. at 279. "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

### Administrative Proceedings

Plaintiff applied for SSI and DIB in October 1994, alleging disability as of September 15, 1994, due to chronic fatigue, Epstein Barr virus, anemia, and mental and visual impairments. Plaintiff's claims were denied initially and upon reconsideration. The plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on February 27, 1996. The ALJ thereafter denied plaintiff's claims in a decision issued August 18, 1999. The Appeals Council denied plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. Plaintiff then appealed to the federal court. On motion of the Commissioner, this Court remanded the case for further proceedings on March 1, 2002. The Appeals Council remanded the case for hearing before a different ALJ on May 29, 2002.

A hearing was held before a second ALJ on December 17, 2002. Plaintiff and a VE testified. The ALJ issued a decision on April 17, 2003, finding that plaintiff was disabled by substance abuse; but that if, as required by law, the effects of substance abuse were not considered, plaintiff retained the residual functional capacity to perform jobs existing in significant numbers in the national economy, such as addresser, clerical sorter, and nut sorter. That determination became the final

2

decision of the Commissioner as the Appeals Council denied plaintiff's request for review. The plaintiff then filed this action for judicial review.

The ALJ made the following findings in this case:

1. The claimant met the disability insured status requirements of the Act on September 18, 1994, the date she stated she became unable to work, and continued to meet them through December 31, 2000, but not thereafter.

2. The claimant has not engaged in substantial activity since September 18, 1994.

3. The medical evidence establishes that the claimant has a combination of impairments, including substance addiction disorder, depression, bipolar disorder, histrionic personality disorder, and possible anemia and chronic fatigue syndrome. Her substance addiction disorder meets the requirements of section 12.09, Appendix 1, Subpart P, Regulations No. 4 and has precluded her from working for at least 12 continuous months (20 CFR 404.1525 and 416.925).

4. The claimant's allegations of fatigue and other subjective symptoms occurring with such frequency and severity as to preclude even sedentary work are credible, but for the reasons set forth in the rationale I find that those symptoms, to the extent they are disabling, have resulted from her persistent drug use, primarily prescription drug use.

5. Considering the limitations that would remain if the claimant ceased her drug abuse, she would retain the residual functional capacity to perform a range of sedentary work not requiring lifting of more than ten pounds. She would be further restricted to low stress jobs requiring no public contact in routine, repetitive tasks involving simple one-to-two step instructions (20 CFR 404.1545 and 416.945).

6. The claimant is unable to perform her past relevant work as a customer service representative, which was a light semi-skilled job.

7. Considering the limitations that would remain if the claimant ceased her drug abuse, her residual functional capacity for the full range of sedentary work is reduced by the non-exertional limitations set forth in Finding No. 5 above.

8. The claimant is 48 years old and is defined as a younger individual (20 CFR 404.1563 and 416.963).

9. The claimant has a high school education (20 CFR 404.1564 and 416.964).

10. Considering her limitations, the claimant does not have any acquired work skills which are

> transferable to the skilled or semiskilled work functions of other work (20 CFR 404.1568 and 416.968).

11. Based on an exertional capacity for sedentary work and the claimant's age, education, and work experience, section 404.1569 of Regulations No. 4 and section 416.969 of Regulations No. 16 and Rule 201.21, Table No. 1 of Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

12. Although the claimant's additional nonexertional limitations do not allow her to perform the full range of sedentary work, using the above-cited rule as a framework for decision-making, there are a significant number of jobs in the national economy which she could perform if she ceased her drug abuse. Examples of such jobs are: addresser, clerical sorter, and nut sorter, of which there are 8,400 in the State of South Carolina and 588,000 in the nation.

13. Drug abuse is a contributing factor material to the finding of disability.

14. The medical evidence establishes that the claimant would not be disabled if she ceased her drug abuse. Therefore, in accordance with § 105 of the Public Law 104-121, enacted on March 29, 1996, the claimant is not entitled or eligible for disability payments under Titles II or XVI of the Act.

## Facts

The claimant was thirty-nine (39) years old at the time she alleges she became disabled and forty-eight (48) years old at the time of the ALJ's decision. She has a high school education and past relevant work experience as a customer service representative, collections representative, cocktail waitress, and bartender.

## Appeal From the Commissioner's Decision

Pursuant to Local Civil Rule 83.VII.02(A), D.S.C, this action was referred to a United States Magistrate Judge. On February 10, 2005, Magistrate Judge Joseph R. McCrorey filed a Report and Recommendation ("the Report") suggesting that the decision of the Commissioner be reversed and this action remanded to the Commissioner for an award of benefits. The defendant filed timely objections to the Report on February 24, 2005. Plaintiff filed a reply to defendant's objections on

March 9, 2005.

> The magistrate judge makes only a recommendation to the Court, to which any party may file written objections . . . . The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a *de novo* determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case, the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

*Wallace v. Housing Auth. of the City of Columbia*, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations omitted).

In her objections to the Report, the defendant claims the Magistrate Judge erred in finding that the ALJ's decision to deny benefits was not supported by substantial evidence. Specifically, the defendant argues that the Magistrate Judge erred in concluding that the ALJ's rejection of Dr. Lundvall's opinion was not supported by substantial evidence and that Dr. Lundvall's opinion was supported by the opinions of Drs. Downie and Ham. Defendant's position is that there is substantial evidence to support the ALJ's determination and that if this Court disagrees the proper remedy is not to reverse the decision of the ALJ and award benefits, but to remand for further administrative proceedings. The plaintiff's reply alleges that the Magistrate Judge was correct in his recommendation because the ALJ relied solely on Dr. Vidic's opinion. Plaintiff argues that "Dr. Videc's opinion was based on assumptions disproven by the record, and it contradicted two long-time treating doctors and a consultative psychologist who examined Hughes twice." (Reply p. 2.)

**Objection 1: Was the ALJ's rejection of Dr. Lundvall's Opinion Supported by Substantial Evidence?**

Defendant argues in her objections that

5

>   the medical record establishes that Plaintiff has abused cocaine, alcohol, diet pills, and prescription drugs since the early 1980's (Commissioner's Brief at 3-12). The ALJ considered this evidence and thoroughly discussed it in his decision (Tr. 588-94). The ALJ's findings regarding Plaintiff's substance abuse were also supported by the testimony of a medical expert, Jeffrey J. Vidic, Ph.D., who testified that Plaintiff had a severe case of prescription dependency and abuse, as exhibited by her doctor shopping, free samples, excessive amounts of medication, erratic use of medications, and her testimony that she had large amounts of medications at home (Tr. 540-46, 549, 553, 555-56).

(Objections pp.1-2.)

Plaintiff submitted the opinion of her treating physician, Dr. Kathy McNamara Lundvall, in support of her claim that her drug and alcohol addiction was not a contributing factor material to a disability determination. On July 29, 1998, Dr. Lundvall completed a medical source statement, indicating that plaintiff had poor to no ability to make occupational or performance adjustments, fair ability to maintain personal appearance, and poor ability to make other personal and social adjustments. (Tr. 445-447.) Dr. Lundvall wrote, on December 16, 2002:

>   Ms. Hughes has had significant problems with significant depression for years. She has had a difficult life, with many life crises that have aggravated her depression; but even during periods when she was not suffering such crises her depression has been significant. On some occasions her mood and affect observed by me have been almost too hyper, but these periods have always been followed by a relapse into a depressive state, with an obviously depressed affect. She has had difficulty with substance abuse in the past, but during long periods when she was substance free, she has continued to be severely depressed. I have no indication that she has abused such substances for some time. She has had significant difficulties getting in for treatment because of transportation difficulties, but there have been long periods during which she was compliant with appointments, during which she continued to be depressed at the same level.
>
>   I have reviewed Dr. Downie's report, and I agree with his opinion as to her limitations. For example, the severity of her depression is such that she would have marked problems dealing with coworkers or supervisors. I think it would be difficult for Ms. Hughes to attend work predictably in light of her unrelenting psychological condition.

(Tr. 705.) A treating physician's opinion is entitled to great weight and may be disregarded by the

ALJ only if persuasive contradictory evidence exists to rebut it. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The ALJ should give controlling weight to the treating physician's opinion if it is consistent with substantial evidence in the case record and is well-supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). If an ALJ disregards a positive opinion of a treating physician that a claimant is disabled, he must explain his reasons for doing so. *See Mitchell v. Schweiker*, 699 F.2d 185 (4th Cir. 1983).

The ALJ's decision to discount Dr. Lundvall's opinion is not supported by substantial evidence. He discounted her opinion based on the opinion of Dr. Jeffrey Vidic, a medical expert who testified at the previous June 1999 hearing. Dr. Vidic is a psychologist who did not examine the plaintiff, but testified after reviewing her medical records. Dr. Vidic admitted at the hearing that, as a psychologist rather than a psychiatrist, he was not qualified to testify about medication use or abuse. Dr. Vidic opined that the plaintiff would not be disabled but for prescription medicine abuse and dependency. Specifically, he speculated that if she got proper treatment for prescription drug dependence she would still have bipolar disorder and personality disorder, but with proper outpatient treatment and medication she would be able to do fairly simply, unskilled tasks; would have moderate impairments in social functioning; and would often have problems with concentration, persistence, or pace. Dr. Vidic admitted that it was impossible to know how much of plaintiff's disability was due to underlying mental illness and what was due to the side effects of medications. (Tr. 548.) He also stated that most of the medications that were prescribed were not addictive. (Tr. 542.) Dr. Vidic's opinions were based, in part, on his supposition that plaintiff engaged in doctor-shopping to seek drugs. However, plaintiff's medical records indicate that beginning in approximately 1995 plaintiff was treated only by Dr. Lundvall at Lexington Mental Health and at Richland Community Health Care

Association. Contrary to Dr. Vidic's speculation, there is no evidence in the record that plaintiff took prescribed medications other than those prescribed at these two centers. Additionally, in a letter dated July 6, 1999, Dr. Lundvall stated that she had spoken to physicians at Richland Health Care about plaintiff's medication regime, which indicates both centers and treating physicians were aware of all the medications the plaintiff was on. (Tr. 482.)

Dr. Lundvall's opinion is all supported by the findings in the record of Dr. David Downie, IV, a psychiatrist who examined plaintiff at the Commissioner's request on two occasions. Dr. Downie administered a battery of tests on February 5, 1999, that revealed moderate to marked depression. He diagnosed plaintiff with bipolar disorder and a history of dysthymic disorder. Dr. Downie completed a medical source statement which indicated that plaintiff had good ability to use judgment; fair ability to follow work rules, relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, maintain personal appearance, demonstrate reliability, and understand, remember, and carry our simple and detailed job instructions; and poor ability to function independently, maintain attention/concentration, behave in an emotionally stable manner, relate predictably in social situations, and understand, remember, and carry our complex job instructions. (Tr. 450-451.) On October 20, 2002, Dr. Downie again examined the plaintiff. He completed a medical source statement in which he opined that plaintiff had moderate limitations in her ability to understand, remember, and carry out simple and detailed instructions; make judgment on simple work-related decisions, interact appropriately with co-workers; and respond appropriately to changes in a routine work setting. He also opined that the plaintiff had marked limitations in the ability to interact appropriately with the public and supervisors and respond appropriately to changes in a routine work setting. (Tr. 689-690.) To the question "If Plaintiff's impairment(s) include alcohol and/or substance, do these impairments

contribute to any of claimant's limitations as set forth above?" Dr. Downie responded "N/A."

Dr. Lundvall's opinion is also supported by the findings of Dr. Charles H. Ham, Jr. Dr. Ham is a psychiatrist who treated the plaintiff at Lexington County Mental Health Center beginning in approximately March of 1995. (Tr. 319.) On February 21, 1996, Dr. Ham completed a medical source statement in which he opined that plaintiff had a "fair" ability to interact with supervisors; function independently; maintain personal appearance; and understand, remember, and carry out simple job instructions. He also stated that plaintiff had a "poor" ability to deal with work stresses; maintain attention/concentration; behave in an emotionally stable manner; relate predictably in social situations; demonstrate reliability; and understand, remember, and carry out detailed and complex job instructions. (Tr. 369-371.)

**Objection 2: Reverse the ALJ's Decision of the ALJ or Remand for Further Proceedings**

Under 42 U.S.C. § 405(g): "The Court shall have power to enter, upon the pleadings and transcript of the record a judgment affirming, modifying, or reversing the Commissioner of Social Security with or without remanding the cause for a hearing." Reversal is appropriate when "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standing and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974). In such a case, an adverse decision on remand could not "withstand judicial review," therefore, reversal is appropriate without the additional step of directing that the case be remanded to the Commissioner. *Id*.; *see also Coffman v. Bowen*, 829 F.2d 514 (4th Cir. 1987). It has been found by this Court that the ALJ's decision to disregard the opinion of Dr. Lundvall was not supported by substantial evidence. Additionally, this Court disagrees with the defendant and finds that reopening the record for additional evidence would serve no purpose.

9

**Conclusion**

On the record before it, this Court must overrule all objections and agree with the Magistrate Judge's recommended disposition of this case. After carefully reviewing the record in this matter, the applicable law, and the positions of the parties, the Court adopts the recommendation of the Magistrate Judge and reverses the determination of the Commissioner that the plaintiff is not disabled.

For the foregoing reasons, all objections are overruled and the Report and Recommendation is incorporated herein by reference. The decision of the Commissioner denying benefits is hereby **REVERSED** and remanded for an award of benefits.

**IT IS SO ORDERED**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

June 16, 2005
South Carolina